**Exhibit A**
Declaration of William V. O'Connor in Support of Removal

ERNIE ZACHARY PARK, State Bar #82616
BEWLEY, LASSLEBEN & MILLER, LLP
13215 E. Penn Street, Suite 510
Whittier, CA 90602-1797
(562) 698-9771; (562) 309-8063 Fax
Ernie.Park@Bewleylaw.com

Attorneys for Plaintiff
Aviation Consultants, Inc.,
a California corporation,
dba ACI Jet

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| AVIATION CONSULTANTS, INC., a California corporation, dba ACI JET<br><br>Plaintiff,<br><br>v.<br><br>DELUX PUBLIC CHARTER, LLC, a Delaware limited liability company; DOES 1 THROUGH 10, INCLUSIVE,<br><br>Defendant | CASE NO.: 30-2021-01176849-CU-UD-CJC<br><br>COMPLAINT FOR UNLAWFUL DETAINER<br><br>**Assigned for All Purposes**<br><br>Judge David A. Hoffer |

Plaintiff alleges as follows:

      1.     Plaintiff is, and at all times herein relevant has been, the sub-lessor of that certain property located at 19301 Campus Drive, Suites 152, 156 and 265, together with ramp space, Santa Ana, California 92707 (the "Premises").

      2.     The true names and capacities of defendants Does 1 through 10, inclusive, are unknown to plaintiff, who therefore sues said defendants by such fictitious

1   names pursuant to Code of Civil Procedure §474.  Each of said defendant Does is

2   responsible in some manner for the events herein referred to and caused injury and

3   damages proximately thereby to plaintiff as hereinafter alleged.  Plaintiff will amend this

4   complaint to show the true names and capacities when the same have been ascertained.

5           3.      Plaintiff is further informed and believes, and thereon alleges, that

6   at all times herein mentioned each of the defendants sued herein was the agent, servant

7   and employee of his co-defendants and in so doing the things hereinafter alleged, was

8   acting within the scope of its authority as such agent, servant, and employee and with

9   the permission and consent of his co-defendants.

10          4.      On or about June 13, 2018, plaintiff and defendants, and each of

11  them, entered into a written agreement (the "License") under the terms of which

12  defendants, and each of them, would rent from plaintiff the Premises.  A true and

13  correct photocopy of the License, and its most recent amendment, are attached hereto,

14  marked respectively as Exhibits 1 and 2.

15          5.      By its terms, the License expired on December 31, 2020.

16          6.      Notwithstanding the foregoing, and without the permission or

17  consent of plaintiff, the defendant remains in possession of the Premises.

18          7.      Defendants' holding over and continuance in possession of the

19  Premises is willful, intentional, and deliberate.

20          8.      The reasonable rental value of the Premises is the sum of $282.35

21  per day, and damages to plaintiff caused by defendants' unlawful detainer will accrue at

22  said rate on and after January 1, 2020, and for so long thereafter as defendants remain

23  in possession of the Premises.

24          9.      An additional provision of the License provides for the payment of

25  reasonable attorneys' fees and costs should it become necessary to institute any action

26  to enforce the provisions of thereof. Plaintiff has been forced to engage counsel to

27  represent it in the initiation of this action.

28

Complaint For Unlawful Detainer                                                                        Exhibit A, Page 000006

1          WHEREFORE, plaintiff prays judgment against defendants, and each of

2  them, as follows:

3          1.     For restitution of the Premises and a declaration that the License be

4  deemed forfeited;

5          2.     For damages at the rate of $282.35 per day on and after January 1,

6  2020, and for each and every day thereafter that defendants, and each of them, remain

7  in possession of the Premises;

8          3.     For reasonable attorney's fees;

9          4.     For costs of suit incurred herein; and

10        5.     For such other and further relief as the court deems just and proper.

11                     BEWLEY, LASSLEBEN & MILLER, LLP

12

13

14             By: _____

15                  Ernie Zachary Park,

                      Attorney for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**FBO SPACE AGREEMENT**

June 13

THIS FBO SPACE AGREEMENT (*"Agreement"*) is made and entered into as of April ___, 2018, AVIATION CONSULTANTS, INC., dba ACI Jet (*"Licensor"*) and DELUX PUBLIC CHARTER, LLC (*"Licensee"*).

Licensor leases the "Licensor's Facilities" (defined below) from the County of Orange, a political subdivision of the State of California ("Master Lessor"), pursuant to the Eastside Fixed Base Operation (FBO) & Westside Hangar Interim Lease between Licensor and Master Lessor, dated April 1, 2017 ("Master Lease"), and Licensee desires to obtain from Licensor, and Licensor desires to grant to Licensee, the right to use a portion of Licensor's Facilities; and

Licensor and Licensee have agreed to terms and conditions upon which such portion of Licensor's Facilities shall be used and desire to execute this Agreement to memorialize their agreement;

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants hereinafter set forth, the parties hereto agree and covenant as follows:

1.   **Basic Provisions**.

(a)   *"Aircraft"*: See Exhibit A attached hereto (individually or collectively, the *"Aircraft"*), if applicable.

(b)   *"Space"*: Check as applicable: [N/A] unassigned hangar space within the aircraft hangar(s) and associated facilities (*"Licensor's Facilities"*) operated by Licensor and located at John Wayne Airport; [X] unassigned ramp space at Licensor's Facilities; [N/A] space within the hangar(s) (*"Hangar"*) or portion thereof at Licensor's Facilities which is identified in Exhibit B attached hereto; and/or [X] Office Suite(s) No(s). 156 (*"Office Space"*).

(c)   *"Term"*: The Term shall commence July 4, 2018 (*"Commencement Date"*), and shall be month-to-month, terminable by either party on not less than thirty (30) days' advance written notice to the other party.

(d)   *"License Fee"*: The monthly License Fee is sum of the following:

| | |
|---|---:|
| Ramp Space | $100 |
| Suite 156 | $520 |
| | |
| **Total:** | **$620** |

(e)   The License Fee is Six Hundred Twenty Dollars ($620) per month, payable in advance on the first day of each month during the Term.  Licensee will pay the License Fee for the first month to Licensor concurrently with Licensee's execution of this Agreement.  The License Fee will increase on each anniversary of the Commencement Date (each an *"Adjustment Date"*) to an amount equal to one hundred five percent (105%) of the License Fee in effect immediately preceding the Adjustment Date.

(f)   *"Security Deposit"*: SIX HUNDRED TWENTY DOLLARS ($620).

2.   **Use**.  Licensor hereby grants to Licensee, and Licensee hereby obtains from Licensor, a license to use the Space solely for the purpose of storing the Aircraft (if applicable) and/or for general office use of the Office Space (if applicable).  Notwithstanding anything to the contrary in this Agreement, Licensor shall have the right to cause the Aircraft to be stored outside the Hangar overnight up to five (5) nights per month.  The Space shall be unassigned and shall be designated by Licensor from time to time except (a) if the Space is an entire Hangar or (b) the Office Space.

1

Licensee Initials: _____
Licensor Initials: _____

Licensor's obligations under this Agreement is subject to Licensor's receipt of approval by Airport Director to base the Aircraft (if any) at Licensor's Facilities and in the event that this approval cannot be secured or is revoked, this Agreement shall, at Licensor's option, be terminated upon written notice to Licensee. Promptly following the execution of this Agreement, Licensor will submit to Airport Director a request for the Aircraft to be based at Licensor's Facilities. In addition, Licensor's obligations under this Agreement are conditioned on Licensor's obtaining the approval of this Agreement from the Airport Director.

3.    **Payment of License Fee.** Licensee shall pay the License Fee specified above to Licensor, in advance, on or before the first day of each month during the Term. In addition to the License Fee, Licensee shall pay to Licensor concurrently with each payment of the License Fee the following: any access fee, sales tax, use tax, other governmental charges or hangar use tax which may be charged by the City of Santa Ana, the Airport or any other governmental agency. If Licensee fails to pay any installment of License Fee or amount owing to Licensor under this Agreement within 10 days after the due date, Licensee shall pay Licensor a late charge equal to ten percent (10%) of such installment or other amount. In addition, any amount not paid within 10 days after the date due shall bear interest on the unpaid amount at the rate of ten percent (10%) per annum from the date due until paid in full.

4.    **Security Deposit.** Concurrently with Licensee's execution of this Agreement, Licensee pay to Licensor the Security Deposit specified in Section 1 above, which shall continue to be held by Licensor as security for Licensor's full compliance with this Agreement. If any sum payable by Licensee to Licensor is overdue and unpaid or paid by Licensor on Licensee's behalf, or if Licensee fails to perform any of its obligations under this Agreement, then Licensor may, at its option and without prejudice to any other remedy which Licensor may have, apply the entire Security Deposit or so much as is necessary to compensate Licensor for any amount owing by Licensee or other damages sustained by Licensor due to such default by Licensee. If Licensor applies the Security Deposit as above permitted, Licensee shall immediately replenish the Security Deposit on Licensor's demand. The unapplied portion of the Security Deposit, if any, shall be refundable within 30 days after the expiration or termination of this Agreement. The Security Deposit shall not bear interest.

5.    **Compliance With Laws.** The Space shall be used and occupied by Licensee in a safe and careful manner so as not to contravene any present or future governmental or quasi-governmental laws in force or Licensee's full compliance with all City, County, State, Airport, FAA and Transportation Security Administration rules and Regulations relating to the storage and operation of the Aircraft and the Space. Licensor shall not use the Space in contravention of any present or future governmental or quasi-governmental laws in force or Licensee's full compliance with all City, County, State, Airport, FAA and Transportation Security Administration rules and Regulations relating to the storage and operation of the Aircraft and the Space

6.    **Maintenance, Repair And Replacement.** Upon reasonable notice from Licensee, Licensor shall promptly make necessary repairs to the Space, including all repairs necessary or desirable to keep the Space in good order and repair and in a safe, dry and Licenseeable condition. Any repair made to damage caused by any act, omission or negligence of Licensee, Licensee's agents or invitees, shall be made at Licensee's expense. Further, Licensor shall not be liable to Licensee for failure to promptly make any repairs required of Licensor herein unless Licensee has previously notified Licensor in writing of the need for such repairs and Licensor has failed to commence and complete such repairs within a reasonable period of time.

7.    **Alterations by Licensor.** Licensor may from time-to-time: (a) make repairs, replacements, changes or additions to the structure, systems, facilities or equipment in or comprising the Space as necessary to serve the Space or other parts of the Hangar; and (b) make changes in or additions to any part of the Hangar not in or forming part of the Space.

8.    **Improvements Or Alterations By Licensee.** Licensee shall have no right to modify or alter the Space without Licensor's express written consent in its sole discretion. Without limiting the generality of the foregoing, in no event shall Licensee place any signs on the Space or any other portion of Licensor's Facilities.

9.    **Mechanics' Liens.** Licensee shall pay before delinquency all costs for work done or caused to be done by Licensee in the Space which could result in any lien or encumbrance on Licensee's interest in the Space or Hangar or any part thereof, shall keep the title to the Space and Licensor's Facilities and every part thereof free and

2

Licensee Initials: _____
Licensor Initials: _____

clear of any lien or encumbrance in respect of such work and shall indemnify and hold Licensor harmless against any claim, laws, cost, demand and legal or other expense, whether in respect of any lien or otherwise arising out of the supply of material, services or labor for such work.

10.    **Insurance And Indemnification; Waiver of Subrogation.**

(a)    Licensee agrees that, during the Term, it will maintain at its expense at all times in full force and effect, with insurers of recognized responsibility, minimum insurance coverage(s) as set forth on *Exhibit "C"* to this Agreement. Each such policy shall name Licensor, its direct and indirect subsidiaries and affiliated companies under common control with Licensor, and each of their respective officers, directors, agents, servants and employees as an additional insured (collectively, the *"Additional Insureds"*). Such insurance shall be primary insurance to any other insurance available to the Additional Insureds. If Licensee fails to perform any of its obligations regarding the acquisition and maintenance of insurance, Licensor may perform the same and the cost of same shall be payable by Licensee upon Licensor's demand.

(b)    Licensor agrees that, during the Term, it will maintain at its expense at all times in full force and effect, with insurers of recognized responsibility, minimum insurance coverage(s) as required by the Master Lease. Upon thirty (30) days written notice by the Licensee, the Licensor will provide Licensee with a certificate of Licensor's insurance coverage. Licensor is required to respond to a request from Licensee for a copy of such insurance certificate only one (1) time per calendar year.

(c)    Any and all injury, breakage or damage to the Space or the real property of which the Space is a part, arising from any cause, done by Licensee or its agents, contractors, servants, invitees or employees, may be repaired by Licensor at the sole expense of Licensee.

(d)    Licensee agrees to indemnify, save and hold harmless the Additional Insureds from any and all liabilities, expenses, causes of action, damages, and/or reasonable attorney's fees resulting from or arising out of any of Licensee's businesses, operations, occupancy, or use of the Space, or from any act or omission of Licensee's agents, contractors, servants, invitees or employees.

(e)    All personal property of Licensee, its agents, contractors, servants, invitees or employees, in and on the Space or any part of the real property on which the Space is located, shall be and remain therein under any and all circumstances at the sole risk of said parties and Licensor shall in no event be liable to any such person or party for any damage to, or loss thereof. Licensor shall have no obligation to keep, maintain or secure Licensee's property, and Licensee assumes all risk of loss or damage to its property located in the Space.

(f)    Licensor shall not be liable for any personal injury to Licensee, Licensee's agents, contractors, servants, invitees or employees arising from the use and condition of the Space or any part of the real property on which the Space is located.

(g)    The parties agree that under no circumstances shall Licensee or Licensor be liable to the other for any indirect, incidental, consequential, special, punitive or exemplary damages, including, but not limited to, damages for diminution in value, loss of use, lost profits or lost opportunity.

(h)    Licensor agrees to indemnify, save and hold harmless Licensee from any and all liabilities, expenses, causes of action, damages, and/or reasonable attorney's fees resulting from or arising out of damage to property or injury to persons resulting from the negligence or willful misconduct of Licensor in its operation of Licensor's Facilities.

(i)    Licensor and Licensee each hereby waives all rights of recovery against the other on account of loss and damage occasioned to the property of such waiving party to the extent that the waiving party is entitled to proceeds for such loss and damage under any property insurance policies carried or otherwise required to be carried by this Agreement; provided however, that the foregoing waiver shall not apply to the extent of Licensee's obligation to pay deductibles under any such policies and this Lease. By this waiver it is the intent of the parties that neither Licensor nor Licensee shall be liable to any insurance company (by way of subrogation or

3

Licensee Initials: _____
Licensor Initials: _____

otherwise) insuring the other party for any loss or damage insured against under any property insurance policies, even though such loss or damage might be occasioned by the negligence (but not the gross negligence or willful or intentional misconduct) of such party, its agents, employees, contractors or invitees.

11.    **Arrival/Departure Notice.**  Unless the Space is only Office Space, Licensee shall inform Licensor of the arrival and departure schedule of the Aircraft and cooperate with Licensor to minimize the movement of Aircraft.  Licensee shall not be permitted to move the Aircraft into or out of the Space or to move the Aircraft within other areas in the vicinity of the Space which Licensor may designate from time to time.

12.    **Default.**

(a)    The occurrence of any of the following shall constitute a material default and breach of this Agreement by Licensee:

(i)    Any failure by Licensee to pay the License Fee or any other monetary sums required to be paid hereunder where such failure continues for five (5) days after written notice thereof by Licensor to Licensee;

(ii)    A failure by Licensee to observe and perform any other provision of this Agreement to be observed or performed by Licensee, where such failure continues for fifteen (15) days after written notice thereof by Licensor to Licensee;

(iii)    The making by Licensee of any general assignment or general arrangement for the benefit of creditors; the filing by or against Licensee of a petition to have Licensee adjudged a bankrupt or of a petition for reorganization or arrangement under any law relating to bankruptcy (unless, in the case of a petition filed against Licensee, the same is dismissed within sixty (60) days); the conveyance of substantially all of Licensee's assets located at the Space or of Licensee's interest in this Agreement, where possession is not restored to Licensee within thirty (30) days; or the attachment, execution or other judicial seizure of substantially all of Licensee's assets located at the Space or of Licensee's interest in this Agreement, where such seizure is not discharged within thirty (30) days.

(b)    Licensor shall not be in default under this Agreement unless Licensor shall fail to perform or observe any covenant or requirement of this Agreement and such failure continues for a period of thirty (30) days following receipt of written notice from Licensee of such failure (provided that such time period shall be reasonably extended for so long as Licensee diligently prosecutes the cure of such failure).

13.    **Remedies.**  In the event of any default or breach by Licensee, Licensor may at any time thereafter, terminate this Agreement on written notice to Licensee, in which event Licensee shall vacate the Space as provided in Section 15 below.

14.    **Recourse; Licensor Liability.**  Licensee's sole recourse under this Agreement against Licensor shall be to the interest of Licensor in and to the Licensor's Facilities and proceeds thereof.  Licensee shall have no right to satisfy any judgment which it may have against Licensor from any other assets of Licensor or from any other assets of any partner, venturer, member, shareholder or manager of Licensor.  The provisions of this Section are not intended to limit the Licensee's right to seek injunctive relief or specific performance, or Licensee's right to claim the proceeds of insurance (if any) specifically maintained by Licensee for Licensee's benefit.  In all events, Licensor's or Licensee's aggregate liability to the other arising out of or in any way connected with this Agreement, the Space and/or the Hanger and the use and operation thereof shall not exceed Ten Million Dollars ($10,000,000).

15.    **Surrender; Holding Over.**  Licensee covenants with Licensor that at the expiration of the Term of this Agreement it will immediately vacate and surrender peaceable possession of the Space to Licensor.  It is expressly understood and agreed, that until the expiration or sooner termination of this Agreement, if Licensee fails to surrender the Space to Licensor at the expiration or termination of this Agreement as required by this paragraph, Licensee shall be deemed to be a month to month occupant in the Space on the same terms and conditions set forth herein, except that the monthly License Fee shall be 200% of the License Fee in effect prior to such expiration.

4

Licensee Initials: _____
Licensor Initials: _____

16.    **Notices.**  Any and all notices, requests or demands required hereunder shall be in writing and shall be delivered personally, by facsimile with original by U S Mail or sent by United States certified mail, return receipt requested, postage prepaid and addressed as set forth on the signature page hereto.

17.    **Brokerage Commissions.**  The parties hereto represent and warrant to each other that no real estate commissions are due and owing as a result of consummation of this transaction other than set forth in separate writing between the parties.  If any person shall assert a claim, fee, commission or other compensation on account of alleged employment as a broker or finder or for performance of services as a broker or finder in connection with this transaction, the party hereto under whom the broker or finder is claiming shall indemnify and hold harmless the other party against and from any such claim, and all costs, expenses and liabilities incurred in connection with such claim or any action or proceeding brought thereon (including, but without limitation, attorney and witness fees and court costs in defending against such claim).

18.    **Time Is of The Essence.**  Time is and shall be deemed of the essence in respect of the performance of each provision of this Agreement.

19.    **Assignment.**  This Agreement, nor any portion thereof or of the Space may be assigned by Licensee, or sublet or licensed to anyone (other than to the indirect and direct subsidiaries or affiliates of Licensee) without the prior written consent of Licensor, which may be withheld for any reason at Licensor's discretion. Licensor shall have the right to assign this Agreement to any successor to Licensor's interest in the Hangar, and in such event the assigning Licensor shall be released from all obligations accruing under this Agreement from and after the date of such assignment.

20.    **Rules And Regulations; Security Requirements.**  Licensor reserves the right to adopt and/or amend from time to time, rules and regulations, which Licensor reasonably believes will enhance the safety, benefit and convenience of all tenants and other persons at Licensor's Facilities.  As used herein, *"Rules and Regulations"* shall refer such rules and regulations adopted by Licensor and all applicable rules and regulations of the County in effect from time to time.  Licensee will comply with, and will cause all of its employees, agents, vendors and invitees to comply with, all applicable security requirements of the Airport, FAA and Transportation Security Administration.  In addition, Licensee acknowledges that no vendor of or service provider for Licensee shall be permitted to enter Licensor's Facilities unless and until it has executed a release on Licensor's standard form.

21.    **Master Lease.**  This Agreement is subject and subordinate to the Master Lease and will automatically terminate on the expiration or termination of the Master Lease.  Licensor has and will continue to comply with all terms and conditions of the Master Lease and shall promptly notify Licensee of any material breach by Licensor of the Master Lease.

22.    **Security Access Keys.**  Licensor will provide security access keys to Licensee for access to the Space during nonbusiness hours Licensee will notify Licensor immediately if security access keys are lost or stolen and will pay a replacement fee of $100.00 per key for each security access key that is reissued to Licensee.

23.    **Non Waiver of Default.**  Any failure or neglect by either party to assert or enforce any rights or remedies because of a breach or default by the other hereunder shall not (except as to those specified instances herein when express time limits are provided for taking of action) prejudice or effect their respective rights or remedies with respect to any subsequent breaches or defaults, and shall not be construed as a waiver of their respective rights to assert and enforce any rights or remedies for subsequent breaches or defaults.

24.    **Attorney's Fees.**  In the event any legal action is brought by either of the parties hereto against the other party by reason of or in connection with this Agreement, the party prevailing in such action shall be entitled to recover from the other party its attorneys' fees and costs incurred therein.

25.    **Entire Agreement.**  This Agreement and addendum contain the entire agreement of the parties and no representations, inducements, promises or agreements, oral or otherwise not embodied herein shall be of any force or effect.

Licensee Initials: _____

Licensor Initials: _____

Exhibit A, Page 000013

26.    **Governing Law.** This Agreement shall be deemed to be made under, and shall be construed in accordance with and shall be governed by the laws of the State of California and suit to enforce any provision of this Agreement or to obtain any remedy with respect hereto may be brought in the Superior Court of Orange County, California, and for this purpose, each party hereby expressly and irrevocably consents to the jurisdiction of said court.

27.    **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

28.    **Exhibits.** All exhibits referred to herein are incorporated into this Agreement the same as if set forth at length herein.

29.    **Utilities; Janitorial Service.** Licensor agrees to pay the cost of all reasonable and customary utilities (heating, cooling, electricity and water) for the Space.  If Licensee requires utilities other than those or in quantities greater than those available at the Effective Date, Licensee is solely responsible to arrange for them, coordinate their installation with Licensor's requirements, and pay for such costs.  Licensor will provide reasonable and customary janitorial services for the Office Space, if applicable.

30.    **Casualty or Condemnation.** If any significant portion of the Space or other portion of Licensor's Facilities required for the reasonable use of the Space is destroyed by fire or other casualty, Licensee or Licensor shall have the option upon written notice to the other party to terminate Agreement, provided Licensee shall not exercise such right in the event such destruction or casualty arises either directly or indirectly from Licensee's acts or omissions.  If all or part of the Space or other portion of Licensor's Facilities required for the reasonable use of the Space is taken or condemned by any authority for any public use or purpose, which renders the Space untenantable or unusable, this Agreement shall terminate as of the date title vests in such authority.

31.    **Force Majeure.** Any prevention, delay or stoppage due to strikes, lockouts, labor disputes, acts of God, inability to obtain labor or materials or reasonable substitutes therefor, governmental restrictions, regulations, or controls, judicial orders, enemy or hostile governmental action, civil commotion, terrorist activities, fire or other casualty, and other causes (except financial) beyond the reasonable control of the party obligated to perform, shall excuse the performance by that party for a period equal to the prevention, delay or stoppage; provided, however, that the foregoing shall not excuse or extend the time period for the payment of the License Fee or any other amounts owing by Licensee hereunder.

32.    **Ground Handling.** See Exhibit "F" attached hereto,.

6

Licensee Initials: _____
Licensor Initials: _____

Exhibit A, Page 000014

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.

LICENSOR:

AVIATION CONSULTANTS, INC.,
dba ACI Jet

By: _____

Its: _____

Address for Notices:

ACI Jet Orange County
*Attention*: Joe Daichendt
19301 Campus Drive, Suite 100
Santa Ana, CA 92707
Email: jdaichendt@acijet.com

LICENSEE:

DELUX PUBLIC CHARTER, LLC

By: _____

Its: _____ CEO _____

Address for Notices:

*Attention*: David Drabinsky
Director of Commercial and Planning
Jet Suite & Jetsuite X
18952 MacArthur Blvd, Suite 200
Irvine, CA 92612
Email: David.drabinsky@jetsuite.com
Office: (949) 892-4345
Mobile: (949) 624-3124

7

**EXHIBIT "A"**

**AIRCRAFT**

**JetSuite X aircraft tail #'s to be provided by JetSuite on a monthly basis.**

| Aircraft Make | Model | Tail # | Serial # |
|---|---|---|---|
| | | | |
| | | | |

A-1

Licensee Initials: _____

Licensor Initials: _____

**EXHIBIT "B"**

<u>HANGAR</u>

Not Applicable.

Licensee Initials: _____
Licensor Initials: _____

EXHIBIT "C"

INSURANCE REQUIREMENTS

The **Additional Insured** wording on all Certificates of Insurance must include verbatim the following:

> "Licensor, its subsidiaries and affiliated companies, the Airport Authority, County, and each of their respective officers, directors, agents, servants, contractors and employees are named as Additional Insureds. The automobile coverage includes liability arising from scheduled, hired and non-owned autos while operating on airport premises (on AOA)."

*Please note that it is not acceptable to submit a Certificate of Insurance with blanket*

*additional insured verbiage.* The following **Waiver of Subrogation** wording is also required to

be included verbatim on all Certificates of Insurance:

> "The above referenced policies includes Waiver of Subrogation in favor of the Additional Insureds. Insurance is Primary and Non-Contributory to any other Insurance except for Workers' Comp."

The **Certificate Holder** for all Certificates of Insurance must be made out to:

The **Certificate Holder** for all Certificates of Insurance must be made out to:

**AVIATION CONSULTANTS, INC., dba ACI Jet**
**19301 Campus Drive, Suite 100**
**Santa Ana, CA 92707**

**INSURANCE LIMIT REQUIREMENTS**

A) **LIABILITY INSURANCE:**
   a. Coverage shall have a minimum combined single limit of liability of at least One Million Dollars ($1,000,000.00) each occurrence, and a minimum general aggregate limit of Two Million Dollars ($2,000,000.00).

B) **Automobile Liability Insurance:** Automobile Liability Insurance to a minimum limit of five hundred thousand dollars ($500,000) per occurrence for all of User's owned, nonowned or hired vehicles operating on or proximate to the Airport premises. If User's activities require vehicle access and/or support equipment access to any areas of the Airport where aircraft are stored, serviced or operated, User shall further be required to obtain Comprehensive Automobile Liability coverage in an amount not less than one million dollars ($1,000,000).

C) **Worker's Compensation:**          Coverage A          Workers Compensation – to statutory requirements

                                        Coverage B          Employers Liability – coverage limit of not less than one million dollars ($1,000,000)

All such required insurance, except worker's compensation, shall name Operator and Atlantic Aviation FBO, Inc., the Airport, and each of their respective officers, directors, agents, servants, contractors and employees as additional insureds (the "Additional Insureds") on all companies. User and its insurance carrier(s) agree to waive any and all rights of subrogation.

Licensee Initials: _____
Licensor Initials: _____

### EXHIBIT "F"

### GROUND HANDLING

Licensor and Licensee acknowledge that the figures shown below represent Ground Handling costs per flight. These costs are inclusive of aircraft fueling, overnight parking, GPU usage (up to 45 minutes), lavatory servicing, usage of FBO lobby and any other regular services related to the handling of the aircraft.

| | | |
|---|---|---|
| July 2018 | $400 | 4 ticket vouchers per flight |
| August 2018 | $450 | 3 ticket vouchers per flight |
| September 2018 | $500 | 2 ticket vouchers per flight |
| October 2018 | $550 | 1 ticket voucher per flight |
| November 2018 | $600 | ----------- |
| December 2018 and each month thereafter | $600 | ----------- |

Licensee Initials: _____
Licensor Initials: _____



# EXHIBIT 2

## THIRD AMENDMENT TO SPACE AGREEMENT

THIS THIRD AMENDMENT TO SPACE AGREEMENT (*"Amendment"*) is made as of June 3, 2020, by AVIATION CONSULTANTS, INC., dba ACI Jet (*"Licensor"*) and DELUX PUBLIC CHARTER, LLC (*"Licensee"*).

Licensor and Licensee are parties to that certain FBO Space Agreement dated June 13, 2018, (*"Agreement"*).

Licensor and Licensee desire to amend the Agreement on the terms set forth below. Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Agreement.

1.    **Section 1, Basic Provisions, Item (d) "License Fee"** is hereby deleted and replaced with the following *effective July 2, 2020*:

| | |
|---|---|
| Office Suite No. 152 | $5,749.80 |
| Office Suite No. 156 | $546.00 |
| Office Suite No. 265 | $1,860.00 |
| Ramp Space | $105 |
| **Total:** | **$8,260.80** |

2.    **Entire Agreement; Effect of Amendment.** This Amendment contains the entire agreement of the parties concerning the amendment of the Agreement and no representations, inducements, promises or agreements, oral or otherwise not embodied herein shall be of any force or effect. Except to the extent of the Agreement is modified by this Amendment, the terms and provisions of the Amendment shall remain unmodified and in full force and effect. In the event of conflict between the terms of the Amendment and the terms of this Amendment, the terms of this Amendment shall prevail.

3.    **Counterparts.** This Agreement may be executed in one or more counterparts (including counterparts transmitted electronically), each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment on the day and year first above written.

LICENSOR:                                                          LICENSEE:

AVIATION CONSULTANTS, INC.,                    DELUX PUBLIC CHARTER, LLC
dba ACI Jet

By: _____                    By: _____

Its: Director of Client Relations FBOs          Its:    CFO

Date: 6/17/20.                                              Date: 06/16/2020

1 of 1

Exhibit A, Page 000021

**VERIFICATION**

STATE OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

I have read the foregoing  COMPLAINT FOR UNLAWFUL DETAINER _____
_____ and know its
contents.

**[X]CHECK APPLICABLE PARAGRAPHS**

☐ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

☒ I am ☒ an officer ☐ a partner _____ of Plaintiff, _____
AVIATION CONSULTANTS, INC., a California corporation, dba ACI JET, _____
a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☒ I am informed and believe and, on that ground, allege that the matters stated in the foregoing document are true.

☐ The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

☐ I am one of the attorneys for _____, a
party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and, on that ground, allege that the matters stated in the foregoing document are true.
Executed on (date) December  31 , 2020 _____, at Newport Beach _____, California.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

William Borgsmiller, President of Aviation
Consultants, Inc. _____                    _____
        Type or Print Name                                                   Signature

**PROOF OF SERVICE**
CCP 1013a(3) Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF
I am employed in the County of _____, State of
California. I am over the age of 18 and not a party to the within action; my business address is _____
_____.

On (date) _____, **1 served the foregoing document described as _____
_____ on _____ in this action
☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:
☐ by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:




☐ BY MAIL
  ☐ *I deposited such envelope in the mail at _____, California.
     The envelope was mailed with postage thereon fully prepaid.
  ☐ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.
     Under that practice, it would be deposited with the U.S. Postal Service on that same day, with postage thereon fully
     prepaid at _____, California in the ordinary course of business. I am
     aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is
     more than one day after date of deposit for mailing in affidavit.
Executed on (date)_____, at _____, California.
I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____                    _____
     Type or Print Name                                                   Signature

* (BY MAIL, SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN MAIL SLOT, BOX OR BAG)
** FOR PERSONAL SERVICE, SIGNATURE MUST BE THAT OF MESSENGER)
967 (R1/98)

American LegalNet, Inc.
www.FormsWorkflow.com